RICARDO A. GÓMEZ, peticionario, *v.* LUIS NEGRÓN FERNÁNDEZ, PROCURADOR GENERAL INTERINO DE PUERTO RICO, demandado.

Núm. 408.—*Sometido:* Julio 2, 1945. *Resuelto:* Julio 16, 1945.

*R. Cuevas Zequeira* y *A. Ortiz Toro,* abogados del peticionario; *Hon. Procurador General Interino Luis Negrón Fernández,* y *Luis Venegas Cortés, Procurador General Auxiliar,* abogados del demandado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

En la solicitud en este caso se alega, en síntesis, que el demandante Ricardo A. Gómez, fué nombrado, el 13 de abril de 1943, por el Gobernador con el consentimiento y aprobación del Senado para ocupar por cuatro años el cargo de Fiscal del Tribunal Supremo de Puerto Rico de acuerdo con la Ley núm. 39 aprobada el 7 de marzo de 1912; que el demandante desempeñó dicho cargo hasta el 30 de junio de 1945 y cumplió con todas sus obligaciones; que la Asamblea Legislativa de Puerto Rico aprobó el 14 de mayo de 1945 la Ley núm. 270 (pág. 945) con el propósito de enmendar la Ley núm. 39 de 1912 (pág. 75) y en lo que concierne al cargo de Fiscal del Tribunal Supremo "se limitó a verificar una leve alteración en la designación oficial del cargo en cuestión, que ahora se designa con el nombre de Procurador General Auxiliar y Fiscal del Tribunal Supremo con las mismas obligaciones, atribuciones y deberes del cargo anterior"; que el demandado a requerimiento del demandante le dirigió una comunicación con fecha 2 de julio de 1945, en la cual hacía constar que se negaba a nombrarle para ocupar la plaza de Procurador General Auxiliar y Fiscal del Tribunal Supremo creada por la Ley núm. 270 de 1945 por considerar que el cargo de Fiscal del Tribunal Supremo quedó abolido por dicha ley y el nuevo cargo es de nombramiento del Procurador General sin que a su juicio tenga derecho "a ocupar el nuevo cargo de Procurador General Auxiliar quien será a la vez el Fiscal del Tribunal Supremo" por el hecho de haber ocupado el cargo inexistente de Fiscal del Tribunal Supremo; que dicha comunicación tiene el propósito y

produjo el efecto de destituir al demandante del cargo que desempeñaba, sin habérsele formulado cargos y sin que el demandante realizara acto alguno que le incapacitara para continuar en el ejercicio del puesto de ·Fiscal del Tribunal Supremo; que la actuación del demandado "es injusta, arbitraria, opresiva y *ultra vires,* por cuanto con ella se pretende privar al demandante de su *status* como funcionario público con derecho a permanecer en su puesto hasta el 13 de abril de 1947 devengando el sueldo correspondiente a dicho cargo"; que el demandante carece de remedio adecuado, rápido y eficaz en el curso ordinario de la ley para obligar al demandado a cumplir con el "deber ministerial" que tiene de reponerlo en "el cargo que hasta el día 30 de junio de 1945 desempeñara." Por último se alegan los motivos que tiene el demandante para acudir en primera instancia ante esta Corte y se suplica que se expida un auto perentorio de *mandamus* dirigido al Procurador General Interino Luis Negrón Fernández "ordenándole reponer inmediatamente al demandante en el cargo de Fiscal de la Corte Suprema de Puerto Rico." Y, además, que se expida el auto alternativo correspondiente y usual en estos casos.

Concedimos término al peticionario y al demandado para que radicaran alegato sobre la procedencia de expedir el auto alternativo, y así lo han hecho.

A nuestro juicio los hechos alegados no justifican que expidamos el auto de mandamus solicitado por los motivos siguientes:

■ La petición está predicada bajo la teoría de que el nombramiento para un cargo que no está comprendido en el Servicio Civil Clasificado, como no lo está el del peticionario,(¹) concede a la persona nombrada un "*status* como

---

(¹)La sección 4 de la Ley de Servicio Civil, en lo pertinente, dispone:

"Sección 4.—Servicio No Clasificado. El Servicio no Clasificado comprenderá:

" (*a*) ⁎      ⁎      ⁎      ⁎      ⁎      ⁎      ⁎

" (*b*) Todos los funcionarios nombrados por el Gobernador mediante el concurso y consentimiento del Senado."

funcionario público con derecho a permanecer en su puesto'' por un término fijo, no obstante que la Legislatura haya abolido dicho cargo. Y esto no es así ni aún en relación con aquellos cargos comprendidos en el Servicio Civil Clasificado cuando la abolición ha sido hecha por la Legislatura de buena fe. Así lo resolvimos en *Cruz* v. *Buscaglia, Tes.,* 61 D.P.R. 737, 746, diciendo:

". . . Es doctrina bien sentada la de que cualquier cargo público comprendido dentro del Servicio Civil Clasificado puede ser abolido de buena fe por la Legislatura, pues las leyes de Servicio Civil no garantizan a ningún empleado público el derecho a ocupar un puesto que ya no es necesario. *State ex rel Voris* v. *Seattle,* 74 Wash. 199, 133 Pac. 11; 4 A.L.R. 198; *State ex rel Ware* v. *Sewerage & Water Board,* 160 L. 251, 106 So. 845; Anotación 37 A.L.R. 816. . . .''

Los casos resueltos por esta Corte sosteniendo la doctrina de que la abolición de un cargo y la creación de otro con distinto nombre pero con los mismos deberes y obligaciones, no priva al incumbente del primero del derecho a ser designado para el segundo, han sido casos no sólo de cargos o empleos dentro del Servicio Civil Clasificado, sino que los hechos han demostrado que el funcionario o empleado había adquirido un status de permanente en dicho Servicio. Véanse *Cruz* v. *Buscaglia,* supra; *Rosario* v. *Cuevas, Comisionado,* 60 D.P.R. 470; *Géigel Polanco* v. *Rivera Martínez,* 48 D.P.R. 124 y *Romero* v. *Gore,* 46 D.P.R. 408.

Con las limitaciones que la Ley de Servicio Civil contiene para la protección de aquellos funcionarios o empleados que tengan reconocido un status permanente dentro del

---

En el caso de *Sárraga* v. *Sancho Bonet, Tes.,* 56 D.P.R. 892, se resolvió, y copiando del sumario, que:

"Al ser separado de su cargo, un empleado no incluído en el Servicio Civil Clasificado no tiene derecho a la protección que a los comprendidos en esa clasificación brinda la Ley de Servicio Civil núm. 88 de 1931 (pág. 535) en cuanto a serlo por justa causa y mediante oportunidad de ser oído en su defensa.'' ·

Al mismo efecto, véase *Rodríguez* v. *Buscaglia,* 63 D.P.R. 490.

Servicio Clasificado,(²) no existe, pues, lo que el peticionario califica de su *"status como funcionario público con derecho a permanecer en su puesto" por un término fijo,* si la Legislatura ha tenido a bien abolir su puesto. Veamos, por tanto, si esto ha sido hecho en el caso del peticionario.

Los hechos alegados en la petición demuestran que al caso de autos no son aplicables la doctrina expuesta en esta jurisprudencia y en otra similar citada por el peticionario en su alegato.

El cargo de Fiscal del Tribunal Supremo fué creado, originalmente, a virtud de la Orden General Núm. 118 del 16 de agosto de 1899 promulgada por el Brigadier General Davis, la cual, en su artículo 2 al crear esta Corte dispuso que la misma "tendrá también un fiscal." Posteriormente la Legislatura de Puerto Rico, al aprobar el Código Político el primero de mayo de 1902, dispuso, en su artículo 66, que: "El Attorney General podrá nombrar dos Attorneys General auxiliares, quienes bajo su dirección le ayudarán en sus funciones, y uno de los cuales asistirá a la Corte Suprema como Fiscal de la misma."

No fué hasta el año 1912 que la Legislatura de nuevo legisló en cuanto al cargo y por la sección 2 de la Ley núm. 39 de 7 de marzo (Leyes de 1912, pág. 75), dispuso que: "El Gobernador con el consentimiento del Consejo Ejecutivo, nombrará un Fiscal del Tribunal Supremo, por un período de cuatro años." Las secciones 3, 4 y 5 de esta ley proveían en cuanto a las cualificaciones, deberes, obligaciones y el sueldo de dicho fiscal.

No creemos necesario entrar a considerar y resolver la cuestión planteada por el demandado en su alegato, de si el artículo 14 de la Carta Orgánica, aprobada el 2 de marzo de 1917, tuvo el efecto de derogar, implícitamente, la Ley

---

(²) Y aun en cuanto a dicha ley, la Legislatura puede derogarla o limitar su alcance. *Cruz* v. *Buscaglia,* supra.

núm. 39 de 1912,(³) ya que ésa no es la cuestión que confrontamos a virtud de las alegaciones de la petición.

Sí confrontamos el hecho de que por el artículo 1 de la Ley núm. 270 de 14 de mayo de 1945 (pág. 945) la Legislatura expresamente derogó las secciones 2, 3, 4 y 5 de la Ley núm. 39 de 1912, aboliendo así el cargo de Fiscal de esta Corte. El artículo 2 de esta ley dispone que: "Por la presente se crea en el Departamento de Justicia el cargo de Procurador General Auxiliar, *quien será*, además, Fiscal del Tribunal Supremo de Puerto Rico." (Bastardillas nuestras.) El artículo 3 crea, en el mismo Departamento, un cargo de Oficial Jurídico Ayudante del Procurador General Auxiliar, quien será, además, Fiscal Auxiliar del Tribunal Supremo de Puerto Rico. Continúa la ley especificando los deberes y obligaciones de estos dos funcionarios y disponiendo que sus sueldos se incluirán anualmente en el Presupuesto General de Gastos del Gobierno de Puerto Rico.

¿Puede sostenerse que el cargo de Procurador General Auxiliar, quien será, además, Fiscal del Tribunal Supremo, creado por la Ley núm. 270 de 1945, es el mismo cargo de Fiscal del Tribunal Supremo abolido por dicha ley y que fuera creado por la núm. 39 de 1912? Aun cuando los deberes y obligaciones de ambos cargos sean similares o aun iguales, creemos que no lo son. El Fiscal de esta Corte creado por la Ley 39 era un funcionario nombrado por el Gobernador de Puerto Rico con la aprobación del Consejo Ejecutivo, ahora el Senado de Puerto Rico, por un término de cuatro años. El nuevo cargo de Procurador General Auxiliar y Fiscal de esta Corte, se crea como un subalterno del Procurador General y es nombrado por éste sin término

---

(³) El artículo 14, en lo pertinente, dispone que:

"El Fiscal General tendrá a su cargo la administración de justicia en Puerto Rico; será el consejero legal del Gobernador y de los jefes de departamento, y será responsable de la debida representación del pueblo de Puerto Rico o de sus funcionarios debidamente constituídos, en todas las demandas y procesos, civiles o criminales, ante el Tribunal Supremo de Puerto Rico, en los cuales el pueblo de Puerto Rico esté interesado o sea parte; . . ."

fijo, y, por tanto, el incumbente del mismo podrá ser substituído por el Procurador General a su voluntad. No se limitó, por tanto, la Legislatura, como alega el peticionario, "a verificar una leve alteración en la designación oficial del cargo," sino que varió, fundamentalmente, la forma de su nombramiento y el término del mismo. Y cuando exista la más leve diferencia entre dos cargos, no por su designación oficial, sino en cuanto a su naturaleza, no puede sostenerse que el cargo anterior no ha sido abolido. Aceptando, a los fines de la argumentación, que el peticionario, según alega, no hubiera podido ser destituído sin la formulación de cargos, ese hecho no impedía a la Legislatura abolir su puesto.(4)

Como se dijo en el caso de *Newton* v. *Commissioners,* 100 U. S. 548, 559; "El poder legislativo de un Estado excepto en cuanto está limitado por su propia Constitución,(5) es en todo momento absoluto en cuanto a todos los cargos a su alcance. Puede, a su voluntad, crearlos o abolirlos o modificar sus deberes. Puede asimismo, acortar o extender su término."

Este poder puede ser ejercitado en cualquier momento y aun cuando el cargo esté ocupado por un incumbente debidamente electo o nombrado.(6) A este efecto la Corte Suprema Nacional en el caso de *Butler* v. *Pennsylvania,* 10 How. 402, 416 (1850), expuso la doctrina, ratificada y acep-

---

(1) Se ha resuelto que el poder de la legislatura para abolir cargos creados por ella, no está limitado por una disposición en la Constitución para el residenciamiento y remoción de funcionarios. *Hawkins* v. *Roberts & Son,* 122 Ala. 130, 27 So. 327; *State ex rel. Yancey* v. *Hyde,* 129 Ind. 296, 28 N.E. 186.

(5) Nuestra Carta Orgánica no contiene limitación alguna a este respecto. Por el contrario su sección 40 dispone, que:

"El poder judicial residirá en las cortes y tribunales de Puerto Rico ya establecidos y en ejercicio de acuerdo y por virtud de las leyes vigentes. La jurisdicción de dichos tribunales y los trámites seguidos en ellos, *así como los distintos funcionarios y empleados de los mismos, continuarán como al presente hasta que otra cosa se* disponga por ley; . . ." (Bastardillas nuestras.)

(6) Que nuestra Legislatura ha ejercitado este poder en otras ocasiones lo demuestra la Ley núm. 58 aprobada el 29 de abril de 1930, a virtud de la cual se declaró vacante el cargo de juez de cada una de las cortes de distrito de Puerto Rico y se varió el término de dicho cargo de cuatro años a diez años.

tada hasta el presente,([7]) de que "en todo gobierno debidamente constituído y competente para ejercitar sus funciones debe existir un poder general para aprobar y para derogar leyes; así como para crear, cambiar o descontinuar los funcionarios designados para la ejecución de esas leyes. Tal poder es indispensable para la preservación del cuerpo político, y para la seguridad de los individuos en la comunidad. Es cierto que este poder, o el alcance de su ejercicio, podrá ser controlado por la más alta ley orgánica o constitución del Estado, como ocurre en algunas constituciones estaduales, . . . . *pero donde no se impone tal restricción, el poder descansa únicamente en la discreción del gobierno. . .* Ya hemos demostrado que el nombramiento y la duración de un cargo público, y la determinación de la compensación asignada al mismo, no cae dentro del significado de la sección de la Constitución que invocan los demandantes apelantes; no están incluídos dentro del concepto del término contratos, o, en otras palabras, en los derechos privados personales adquiridos (*vested*) que por ella se intentan proteger. Son funciones pertenecientes a esa clase de poderes y obligaciones a virtud de los cuales los gobiernos pueden, y se les requiere, fomentar y promover el bienestar público; funciones, por consiguiente, que no puede presumirse que han sido renunciadas por cualquier gobierno, si en verdad pudiera bajo cualquier circunstancia justificársele en renunciarlos." (Bastardillas nuestras.)

Está firmemente establecido, pues, que al abolir un cargo creado por la Legislatura no se priva al incumbente de ningún derecho constitucional. No existe ningún derecho contractual o interés de propiedad en relación con la aceptación de un cargo de creación legislativa y el incumbente lo acepta bajo el entendido de que el mismo puede ser abolido en cualquier momento. Véanse al efecto 42 Am. Jur. 904, *Public*

---

([7])Véase *Higginbotham* v. *Baton Rouge,* 306 U.S. 535, 538 (1939) en el cual también se cita con aprobación el de *Newton* v. *Commissioners,* supra.

*Officers,* Sec. 33, y las monografías en 4 A.L.R. 215 y 37 A. L.R. 815.

En el caso de *House* v. *Creveling* (1923) 147 Tenn. 589, 250 S. W. 357, se resolvió que la Legislatura puede adoptar un nuevo sistema de gobierno para tales instituciones o departamentos del estado que no estén protegidos por la Constitución y puede abolir el plan anterior y los cargos creados para la administración de ese plan, en su totalidad o en parte.

La Legislatura de Puerto Rico en su última sesión, además de aprobar la Ley núm. 270, supra, concedió al Procurador General amplios poderes para reorganizar la Rama Ejecutiva de su Departamento al asignar en el Presupuesto de Gastos para el año económico 1945-46 una suma global de $152,168 para el pago de "Sueldos para otros funcionarios y empleados," habiendo fijado la Legislatura en el mismo, únicamente, el sueldo del Procurador General, el de un Juez de Distrito General y los del Procurador General Auxiliar quien será además Fiscal del Tribunal Supremo y el Oficial Jurídico Ayudante del Procurador General Auxiliar quien será además Fiscal Auxiliar del Tribunal Supremo. Es de notarse que en los presupuestos anteriores los sueldos del Fiscal y Fiscal Auxiliar del Tribunal Supremo se fijaban, no como formando parte de la Rama Ejecutiva del Departamento de Justicia, sino en la Rama Judicial.

La actuación legislativa al variar, no sólo el título del cargo, sino la forma de su nombramiento y su término, y por legislación coetánea conceder amplias facultades al Procurador General para reorganizar en otros aspectos el funcionamiento ejecutivo de su departamento, es indicio de que la intención legislativa fué, no sólo abolir el cargo de Fiscal, tal y como existía, sino crear de nuevo uno de los cargos de Procurador General Auxiliar tal y como existía a virtud del artículo 66 del Código Político y que dicho funcionario sea un subalterno del Procurador General.

En cuanto a la sabiduría, conveniencia o motivos que haya tenido la Legislatura para actuar en la forma en que lo ha hecho, no concierne a la rama judicial, dentro de nuestro sistema de separación de poderes, entrar a investigarlos o discutirlos. *Santaella* v. *Garrido, Comisionado,* 50 D.P.R. 147, 157; *Yancey* v. *Hyde,* supra.

Al abolirse el cargo de Fiscal del Tribunal Supremo y crearse el de Procurador General Auxiliar, quien será, además, Fiscal de esta Corte, variando totalmente su término y la forma de su nombramiento y no existiendo prohibición alguna en nuestra Carta Orgánica a que esto pueda hacerse por la Legislatura, somos de opinión que el demandado no tiene el deber ministerial de nombrar al peticionario para el nuevo cargo creado.

*Por los motivos expuestos, no ha lugar a expedir el auto solicitado.*